7
HERUM\CRABTREE\SUNTAG
A California Professional Corporation
DANA A. SUNTAG (California State Bar No. 125127)
5757 Pacific Avenue, Suite 222
Stockton, California 95207
Telephone: (209) 472-7700
Facsimile: (209) 472-7986

Attorneys for Chapter 7 Trustee
GEOFFREY RICHARDS

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| In re: | No.: 20-23923-C-7 |
|---|---|
| MARK ELTON MONTGOMERY, and KAORI IKEDA MONTGOMERY, Debtors. | DC No.: HCS-3　　**CHAPTER 7 TRUSTEE'S MOTION TO SELL REAL PROPERTY, PAY COMPENSATION, AND WAIVE STAY UNDER F.R.B.P RULE 6004(h)**　　Date: March 10, 2021　Time: 10:00 a.m.　Location: Department C |

Chapter 7 Trustee Geoffrey Richards respectfully submits this motion to (i) sell the real property at 3273 Cayman Island Street, West Sacramento (Yolo County), California 95691 (the "Real Property"), to Tresha Inv. LLC (the "Buyer"), (ii) compensate the Realtors, and (iii) waive the 14-day stay of Fed. R. Bank. Pro. Rule 6004(h).

## I.
## FACTS

1. On August 13, 2020, the Debtors filed this case. Geoffrey Richards was appointed Chapter 7 Trustee.

2. in their Schedule A, the Debtors scheduled a fee simple interest in the Real Property, a single family residence, valuing it at $540,350. They exempted $1 under California Code of Civil Procedure Section 703.140(b)(1). In their Statement of Intention, they stated they intend to surrender the Real Property.

3. In their Schedule D, the Debtors scheduled the following liens/encumbrances on the Real Property: (a) a first mortgage in the amount of $659,999 in favor of Carrington Mortgage Services (the "Lender"); (b) a lien from Solar Mosaic Inc. in the amount of $27,065; and (c) real property taxes of $5861.

4. The Trustee's counsel contacted the Debtors' counsel, who confirmed the Debtors intended to surrender the Real Property. Debtors' counsel also stated the Debtors continue to reside at the Real Property and they would reasonably cooperate with the Trustee's efforts to sell it. (Suntag Decl., ¶ 2).

5. The Trustee obtained a preliminary title report (the "PTR") on the Real Property. The PTR confirms ownership as stated above and the above mortgage lien (but no real property tax lien). It also shows that the mortgage was recorded on November 5, 2005, and is in default.[1] The PTR also shows, in addition to the mortgage lien, the following tax liens:

---

[1] On September 16, 2020, the Lender filed a motion for relief from the automatic stay to exercise its state law remedies, which it scheduled for hearing on October 21, 2020. (Doc. No. 24). The hearing was continued to December 16, 2020. (Doc. No. 49). On December 14, 2020, the Lender and the Trustee filed a stipulation to continue the

1　(a) IRS lien of $82,274.73 recorded on June 1, 2011; (b) IRS lien of $13,715.44 recorded on
2　March 14, 2012; (c) FTB lien of $14,002.28 recorded on January 13, 2012; (d) IRS lien of
3　$15,403.70 recorded on July 18, 2012; (e) City of West Sacramento lien of $391.25 recorded
4　on August 15, 2013; (f) IRS lien of $106,061.93 recorded on May 2, 2019; and (g) City of West
5　Sacramento lien of $551.89 recorded on March 5, 2019. The PTR also shows the solar lien.
6　(McKee Decl., ¶¶ 2-3; Ex. C).

7　　　　6.　　The Trustee contacted BK Global Real Estate Services LLC ("BK Global") to
8　discuss obtaining its assistance for a possible short sale of the Real Property. BK Global is a
9　national company headquartered in Boca Raton, Florida, with offices in Texas and Nevada. It
10　specializes in assisting bankruptcy trustees to sell over-encumbered real property by arranging
11　"carveout" deals with mortgage lenders. It represented to the Trustee that it believes it can
12　work out a carveout deal with the mortgage lender on the Real Property that would enable the
13　Trustee to sell it and make a meaningful distribution to the estate. (Butler Decl., ¶¶ 2; 3).

14　　　　7.　　The Handbook for Chapter 7 Trustees published by the Executive Office of the
15　United States Trustee states a trustee "may seek a 'carve-out' from a secured creditor and sell
16　the property at issue if the 'carve-out' will result in a meaningful distribution to creditors."
17　(Page 4-14, § 9(a), "Sale of Assets").

18　　　　8.　　The Trustee also contacted local Realtor Lisa McKee of Lyon RE Sierra Oaks
19　real estate brokerage, California Broker's License Number 01927940, whom he has worked
20　with on prior occasions. The Trustee provided her information on the Real Property and told
21　her that BK Global would attempt to negotiate a carveout with the mortgage lender and asked
22　her if she would work as the local Realtor to list the Real Property for sale and market it for
23　sale. Ms. McKee agreed to do so. (Richards Decl., ¶ 2).

24

25
26
　　　　hearing approximately 90 days to give the Trustee more time to sell the Real Property.
　　　　(Doc. No. 68). The Court did not act on the stipulation; instead, it granted the motion
　　　　without a hearing. (Doc. No. 74). Nevertheless, as we explain below, the Lender has
　　　　been cooperating with the Trustee's efforts to sell the Real Property with a carveout.

9. On September 30, 2020, the Trustee filed an application to employ Ms. McKee to act as his listing agent and to work with BK Global towards a possible sale of the Real Property for an amount less than is owed on the mortgage, and with a carveout for the estate. (Doc. No. 35). The application stated the anticipated Realtor compensation would be a commission of 6% of the gross sales price, of which Ms. McKee would keep one third (2%), one third (2%) would go to BK Global, and the remaining one third (2%) would go to any selling agent (if there were no selling agent, Ms. McKee and BK Global would each receive 3% of the gross sales price), in addition to reimbursement for out of pocket expenses. The application stated that once the Trustee located a buyer and worked out a carveout arrangement with the lender, he would file a motion to sell the Real Property and for compensation pursuant to those terms.

10. Ms. McKee listed the Real Property for sale and marketed it. Her efforts resulted in four offers. The Trustee selected the high offer, which was $515,000, and signed an agreement with that buyer. However, within a week, the buyer cancelled. BK Global then reached out to the second highest offer, at $490,000; however, that offeror failed to respond. (Butler Decl., ¶ 4).

11. The third highest offer was from the Buyer, in the amount of $455,000. In response, the Trustee, through BK Global, asked the Buyer to make his highest and best offer, and the Buyer offered $477,000, which the Trustee agreed to. (The fourth offer was for $425,000, which the Trustee did not counter.) (Butler Decl. ¶ 5).

12. The parties have signed a purchase and sale agreement and related documents. (Richards Decl., ¶ 3; Ex. D). The Buyer has waived all contingencies and made its required deposits, in the amount of $47,930. (McKee Decl., ¶ 4).

13. BK Global contacted the Lender to attempt to negotiate a short sale with a carveout for the estate. Those negotiations were successful. The Lender agreed to a carveout to the estate in the amount of $23,850, plus a $5000 buyer's premium. Those funds will be paid to the estate at closing. (Butler Decl., ¶ 6; Ex. B).

4
MOTION TO SELL AND COMPENSATE

14. Counsel for the Trustee investigated the claim and lien from Solar Mosaic. He determined that it was a lien that secured a purchase of solar equipment at the Real Property, and that the lien attached only to the solar equipment and not to the residence. (Suntag Decl., ¶ 3).

15. The Realtor discussed the Solar Mosaic claim and lien with the Buyer's Realtor. The Buyer's Realtor stated the Buyer did not want to take the property subject to the claim or lien and their preference was to have the equipment removed. (McKee Decl., ¶ 5).

16. Both counsel for the Trustee and BK Global contacted counsel for Solar Mosaic to try to negotiate a reduction of their claim or removal of the equipment. The claim was in the amount of $28,162.17 as of February 8, 2021. Solar Mosaic refused to remove the equipment but did offer to reduce its claim. (Suntag Decl., ¶ 4).

17. There were substantial negotiations with counsel for Solar Mosaic about the amount of reduction it would agree to. Those negotiations lasted over the course of several weeks. Eventually, those negotiations were successful: Solar Mosaic agreed to accept $17,000 in payment of its claim and lien. (Suntag Decl., ¶ 5). Solar Mosaic has signed a consent, which is being filed concurrently.

18. BK Global engaged in negotiations with the Lender to request the Lender to pay the claim out its proceeds from the sale. Eventually, the Lender agreed to pay $15,000 of it. (Butler Decl., ¶ 7). The estate will pay the remaining $2000.

## II.
## THIS COURT SHOULD AUTHORIZE THE SALE OF THE REAL PROPERTY

As the accompanying Memorandum of Points and Authorities explains, a Bankruptcy Court should approve a bankruptcy sale if there is a sound business purpose for it. Here, there is a sound business purpose for the sale: it will allow the estate to obtain proceeds for the benefit of the creditors. Absent the short sale with this carveout, this would be a no-asset case.

In addition, the price is fair and reasonable and was reached only after listing and marketing the Real Property and then negotiations with offerors, including requesting a "highest and best" offer.

Moreover, the sale is in good faith. The agreement was reached only after the Trustee and his Realtor listed the Real Property for sale and marketed it, and after significant negotiations, both with the Buyer and other potential buyers. Neither the Trustee, the Realtor, nor BK Global has any relationship with the Buyer. (Richards Decl., ¶ 4; McKee Decl., ¶ 6; Butler Decl., ¶ 9).

As is explained in the Memorandum of Points and Authorities, the sale will be free and clear of the IRS, FTB, and Solar Mosaic liens.

Finally, while sales of real property in Bankruptcy Court often include a provision for overbidding, that is not feasible in this case because of the short sale/carveout aspect of it. After the Trustee accepted the best offer for the Real Property, BK Global engaged in significant negotiations with the Lender to obtain approval for the short sale and carveout. Those negotiations took weeks, and the Lender's agreement was specifically premised on the terms of the transaction of which this Motion seeks approval. If there is a different offeror with a different sales package, that would require that BK Global to restart the short sale/carveout process with the Lender. That would significantly delay matters, all with no certainty that the Lender would even agree to a different transaction. Moreover, as explained above, before reaching agreement with the Buyer, the Trustee, Ms. McKee, and BK Global engaged in substantial negotiations with the offerors and sought to obtain the highest and best offer before agreeing to the instant transaction. (Butler Decl., ¶ 8).

For the foregoing reasons, the sale is in the best interests of the estate and the Court should approve it.

## III.
## THE COURT SHOULD AUTHORIZE COMPENSATION OF THE REALTOR

The Application to employ the Realtor stated that the agreement with the Realtor, subject to this Court's approval on a sale motion, was for compensation of 6% of the gross sales price, to be split one third each among Ms. McKee, BK Global, and the selling agent, in addition to reimbursement for out of pocket expenses. This works out to $9540 for each of Ms. McKee, BK Global, and the selling agent. None of those parties are claiming reimbursement for expenses.

The Trustee respectfully requests that this Court approve this compensation.

## IV.
## THE COURT SHOULD WAIVE A STAY OF THE ORDER

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure states an order authorizing the sale of property is stayed for 14 days after entry of the order unless the Court orders otherwise.

Here, the Trustee requests that the Court waive the 14-day stay. It is important to the Trustee and the Buyer that the sales close as soon as possible. As such, a waiver of the 14-day stay period is appropriate.

## V.
## CONCLUSION

The Trustee respectfully requests the Court grant this motion, approve the Purchase Agreement and other sale documents, authorize the sale of the Real Property on the terms set forth in this motion and the Purchase Agreement free and clear of the IRS liens, the FTB liens, and the Solar Mosaic claim and lien, waive the 14-day stay of Rule 6004(h), authorize compensation to the Realtors, and grant such other relief as is just and proper.

Dated: February 15, 2021

HERUM\CRABTREE\SUNTAG
A California Professional Corporation

By:     */s/ Dana A. Suntag*
        DANA A. SUNTAG
        Attorneys for the Chapter 7 Trustee